IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**MARY ANGELIA BURNETT**                                                                                          **PLAINTIFF**

V.                                                                                                              NO: 3:23CV183-GHD-JMV

**EAST TALLAHATCHIE SCHOOL
DISTRICT AND DARRON EDWARDS**                                                                    **DEFENDANTS**

## MEMORANDUM OPINION

Presently before the Court is Defendants East Tallahatchie School District ("ETSD") and Darron Edwards' Motion for Summary Judgment. [55]. Plaintiff Mary Burnett has responded in opposition to the present motion, and upon due consideration, for the reasons set forth herein, the Court hereby denies Defendants' Motion for Summary Judgment.

### Factual and Procedural Background

Mary Burnett, a white female, was employed by ETSD as its child nutrition director for approximately eight (8) years, beginning in either 2011 or 2012 and concluding in 2021. While working in this position for ETSD, Burnett applied and was approved for FMLA leave due to a health condition that also involved a neck surgery. Burnett began her FMLA leave on April 19, 2021 and was scheduled to return to work in early July 2021.

While on FMLA leave, Burnett went to Jamaica with her husband and son, stating that she was accompanying her son on a school senior trip as a chaperone. The trip, which took place on or around May 17, 2021 through May 22, 2021, according to Burnett, was cleared by her doctor so long as she did not lift anything over five pounds, exert herself, or get water on her wound.

After the trip, on or around May 24, 2021, Burnett attempted to return to work early as she and her doctor believed that she had recovered enough to perform her job. Once Burnett returned to work at ETSD, she was asked to meet with Dr. Darron Edwards, the superintendent of ETSD,

1

who is a black male. There are differing versions from Burnett and Edwards on how this meeting unfolded, with Burnett claiming Edwards yelled at her stating that she was under investigation and being put on leave and Edwards claiming that Burnett was given the opportunity to inform him of the Jamaica trip but failed to do so.

Burnett was later terminated from her employment on or around June 23, 2021 by Defendant Edwards. Edwards claims that the termination was due to Burnett's violation of FMLA guidelines stating that he believed "if you can go to Jamaica, you can return to work." [65 Ex. B]. Burnett asserts that the termination was based on her race. After her termination, Burnett began new employment with the Coffeeville School District as a child nutrition director on July 1, 2021.

Plaintiff Burnett filed the present lawsuit on August 29, 2022, asserting claims of race discrimination, disability discrimination, and malicious interference with employment. Burnett has apparently withdrawn the claim for disability discrimination as discussed in the response to the present motion. Defendants ETSD and Edwards have moved for summary judgment as to each of Plaintiff Burnett's remaining claims.

**Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(a)). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322, 106 S. Ct. 2548.

2

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id*. "An issue of fact is material only if 'its resolution could affect the outcome of the action.'" *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co*., 297 F.3d 405, 408 (5th Cir. 2002)).

The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 (internal quotation marks omitted.); *Littlefield v. Forney Indep. Sch Dist*., 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc*., 61 F.3d 313, 315 (5th Cir. 1995). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc*., 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005)). "[T]he nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

**Discussion**

As an initial matter, the Court notes that the Defendants' Motion for Summary Judgment [55] is almost entirely, if not entirely, based on a claim for retaliation or interference under the FMLA, which is not a claim that has been asserted by the Plaintiff in this matter. It was not until Plaintiff discussed the proper claims in the response that Defendants then discussed the proper

3

claims in a later filed reply brief. "As a general matter, a district court is not required to address new legal issues raised only in a reply brief." *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 51-52 (5th Cir. 2022) (citing *Redhawk Holdings Corp. v. Schreiber*, 836 F. App'x 232, 235 (5th Cir. 2020) (unpublished); *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) (unpublished). However, the Plaintiff provided a summary judgment argument and analysis in favor of their claims "out of an abundance of caution" following the motion for summary judgment, and thus the Court will consider the arguments contained in the reply brief submitted by the Defendants as the issue appears to be adequately briefed by all parties involved. Further, no party has requested or asserted the need for additional briefing on the matter.

Under Title VII, "[i]t shall be an unlawful employment practice for an employer (1) ... to discharge any individual ... because of such individual's race...." 42 U.S.C. § 2000e–2(a). An employer's decision to terminate an individual's employment violates Title VII when that decision was based on race, whether that race be white or black. *See McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). This Court will apply, absent direct evidence of discrimination based on race, the basic framework that the Supreme Court articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

Under that framework, the plaintiff must first establish a prima facie case of discrimination. *See id.* at 802, 93 S.Ct. 1817. If the plaintiff succeeds in showing a prima facie case, the defendant must then provide some legitimate, non-discriminatory reason for the employee's termination. *See id.* Lastly, if the employer gives a legitimate, non-discriminatory reason for the employment action, the plaintiff must then prove, by a preponderance of the

4

evidence, that the proffered reason was mere pretext for discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093, 67 L.Ed.2d at 215 (1981).

To establish a prima facie case for race discrimination with circumstantial evidence, the plaintiff must show that "[s]he (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for h[er] position, and (4) was replaced by someone outside of the protected class or that similarly situated employees of a different race were treated more favorably." *Turner v. Baylor Richardson Med*. Ctr., 476 F.3d 337, 345 (5th Cir. 2007). Regarding these prima facie elements, there is no dispute that the Plaintiff has established the first three. Neither the Plaintiff nor the Defendants address the fourth element in detail. While the complaint alleges that Plaintiff was replaced by a less qualified black person, which would be outside of Plaintiff Burnett's protected class, the Plaintiff submits no summary judgment evidence to demonstrate that she was replaced by a black person, instead only asserting that she was replaced by someone with less qualifications. Plaintiff also does not show that similarly situated employees of a different race were treated more favorably; there are no employees pointed to specifically by the Plaintiff that were treated more favorably, much less employees of a different race. Plaintiff does, however, provide evidence generally demonstrating that white employees were not treated as well by Defendant Edwards.

The establishment of a prima facie case in this matter is made more difficult as neither party truly discusses the elements; the Plaintiff merely asserts that a prima facie case has been established, and the Defendant merely asserts that a prima facie case has not been established. This lack of briefing and referencing to specific evidence complicates the Court's efforts to navigate this particular aspect of the claim. However, as discussed above, the first three elements do not appear to be in dispute according to the presented evidence.

Turning again to establishing the fourth element of a prima facie case of race discrimination, the Plaintiff must show that she was replaced by someone outside of her protected class or that similarly situated employees of a different protected class were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001). As discussed above, Plaintiff Burnett has not shown that she was replaced by someone outside of her protected class. Burnett does, however, provide evidence supporting her argument that similarly situated employees of a different protected class were treated more favorably. The Fifth Circuit acknowledges that precedent exists that allows a prima facie case to be established without the fourth element being completely satisfied. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (citing *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 n. 7 (5th Cir.1997), *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246–47 (5th Cir.1985), *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996)). The Fifth Circuit states that the fourth element is not irrelevant, it is "certainly material to the question of discriminatory intent." *Id*. citing *Nieto*, 108 F.3d at 624. The Court is, however, able to look at the fourth element with "an expansive understanding" and determine if Plaintiff's protected class was a motivating factor in her employer's decision to terminate her. *Id*.

Plaintiff presents summary judgment evidence demonstrating that co-workers of Burnett who were white were terminated more frequently than ETSD employees who were black from the end of 2020 to the end of 2021. Further, deposition testimony is presented that asserts Defendant Edwards particularly took issue with Caucasian women during his employment with ETSD as the superintendent. Following the evidence presented by the Plaintiff, the lack of contest of the issue from the Defendants, and the previously discussed Fifth Circuit precedent, the Court finds that

6

Plaintiff Burnett has raised a genuine issue of material fact on the elements of a prima facie case of discrimination.

Once the Plaintiff presents a prima facie case, the Defendants must articulate a legitimate, non-discriminatory reason for the employment action. *McDonnell–Douglas*, 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d at 677-79. This issue is not in dispute, as the Defendants have asserted that Plaintiff was terminated based on her taking a trip to Jamaica while purportedly on medical leave under the FMLA. After presenting a non-discriminatory reason for the employment action, the burden of production shifts back to the Plaintiff to produce evidence that the Defendants' articulated reason is merely pretext for discrimination. *Id*.

The plaintiff may meet her burden of proof of showing pretext by establishing "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp*., 283 F.3d 715, 720 (5th Cir. 2002). Plaintiff may also show that the Defendants' reason, even if true, is only one of the reasons for its decision, and another motivating factor is the Plaintiff's protected characteristic. *Autry v. Fort Bend Indep. Sch. Dist*., 704 F.3d 344, 347 (5th Cir.2013) (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir.2011)).

Plaintiff Burnett asserts that defendant Edwards never discussed the reasoning for her investigation and following termination. Specifically, Plaintiff asserts that after returning early from her FMLA leave, Defendant Edwards called her in for a meeting in which he was "[y]elling, accusing [Burnett] of doing something that he never would say." [65 Ex. A]. Plaintiff Burnett has

7

stated that she assumed the meeting was about her FMLA leave, but Defendant Edwards just yelled at her saying "you know what you've done" while never actually specifying any particular behavior. *Id*. Defendant Edwards' testimony further supports part of Plaintiff's claim that she was not told the reason for her investigation or why she may be being investigated. Defendant Edwards' stated that the meeting with Burnett after her return from FMLA leave was the last meeting the two had together, and during the meeting Edwards simply asked if "there was anything [Burnett] wanted to share about why she was off work…." [65 Ex. B].

An employer's investigatory choices might, depending on the facts of a particular case, be suspicious in a way that renders the "defendant's explanation ... unworthy of credence" and permits an inference of discrimination. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 147, 120 S.Ct. 2097 (2000); see also *EEOC v. Chevron Phillips Chem. Co*., 570 F.3d 606, 624–25 (5th Cir. 2009). "[S]uch evidence does not require us to evaluate whether an employer's investigatory practices were sufficient or correct, but only whether, considered with all other evidence, they tend to permit a rational inference that the employer's ultimate reason for taking an adverse action is unbelievable." *Id*. Following this guidance, the Court finds relevant that Defendant Edwards never told Plaintiff Burnett what she was suspected of, never told Burnett where he learned the information from, and never asked Burnett to give any form of input on the alleged misconduct. Regarding how Defendant Edwards learned that Burnett had travelled to Jamaica, there is much debate between the parties. Defendant Edwards states that he learned of this trip from a school board member, Darrel Neal, who learned of the trip from Burnett's daughter, Emily Anderson. However, Emily Anderson has asserted that she has never had a conversation with Darrel Neal, much less discussed the trip with Darrel Neal. Following the vast amount of potential hearsay involved in learning this information and then concluding that an employee should be terminated,

8

the Court continues to find relevance in that, according to Burnett, Defendant Edwards never brought any of this information up to Burnett as to her alleged wrongful act or the surrounding details.

Further, Defendant Edwards stated that standard procedure is to send only one letter of termination to an employee. However, Plaintiff Burnett was sent two letters of termination. The first letter simply stated that she was terminated effective immediately. The second letter was more detailed, stating that Burnett was terminated for violating the FMLA, however, Burnett asserts that she never received this letter.

Also, "[a]n employee may use 'pattern or practice' evidence"—including anecdotal accounts of discrimination from other employees—"to prove pretext in an individual discrimination case." *Jiang v. Tex. Comm'n on Env't Quality*, No. 1:17-CV-739-RP, 2018 WL 8244906, at *1 (W.D. Tex. Sept. 19, 2018) (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000)). The Plaintiff points to Beverly Watson, Rosemary Wolfe, Debra Kuykendall, and David Goad, who share the same protected group status as Burnett, to show further evidence of pretext by demonstrating how ETSD and Edwards treated them similarly and unfairly. These people, along with their assertions, show that they all shared Defendant Edwards as a supervisor, all worked for ETSD, and all were disciplined in some form, which in some cases ended with termination. Each of these former ETSD employees' assertions follows a similar path: the employees were white, the employees were performing well at their position for ETSD, Defendant Edwards then without cause or reasoning placed them under investigation, and Defendant Edwards would not adequately, or at all, explain what was wrong and would then terminate their employment. The Court notes that Kuykendall was not terminated after being put

9

on leave during her investigation, but Kuykendall does contend that she was not provided a reasoning for her investigation taking place.

Statistical evidence may be used in a disparate treatment case "to show that an employer's justification for a discriminatory act is pretext." *Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1137 (5th Cir.1983). However, the Supreme Court has made clear that "[t]he probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination." *Int'l Bd. of Teamsters v. United States*, 431 U.S. 324, 340, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Combined with the other evidence presented in this matter, the Court does find relevant to an extent the statistical evidence shown concerning employees who were discharged between late 2020 and late 2021. While a small sample size, four out of five of employees discharged in this time period were white. Overall, the evidence presented in this matter is sufficient to raise a genuine issue of material fact as to whether Defendant Edwards' and Defendant ETSD's explanation is not the true reasoning for terminating Plaintiff Burnett, but rather pretext for race discrimination, thus Defendants' motion is due to be denied concerning this claim.

Defendants' motion for summary judgment is not one for partial summary judgment, thus, the Court assumes Defendants are seeking dismissal of all of Plaintiff's claims. Concerning Plaintiff's other claim for malicious interference with employment, Defendants make no argument as to why this claim should be dismissed in either their motion for summary judgment or their reply to Plaintiff's response. Therefore, the Court finds no basis to grant summary judgment in favor of Defendants on this claim and the motion for summary judgment will be denied in this aspect as well.

**Conclusion**

For the reasons stated above, the Court finds that Defendants East Tallahatchie School District and Darron Edwards' Motion for Summary Judgment [55] is DENIED.

An order in accordance with this opinion shall issue this day.

This, the  11th  day of January, 2024.

                                                                                                       SENIOR U.S. DISTRICT JUDGE